# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KEVIN RAY DAUGHTREY,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | **Case No.: 2:21-cv-00328-ACA** |
| ] | |
| **ENTERPRISE LEASING COMPANY-** ] | |
| **SOUTH CENTRAL, LLC,** ] | |
| ] | |
| ] | |
| **Defendant.** ] | |

## **MEMORANDUM OPINION**

Plaintiff Kevin Ray Daughtrey rented a car from Defendant Enterprise Leasing Company-South Central, LLC. Mr. Daughtrey claims that ten days later, the brakes malfunctioned, causing him to run the car off the road into a tree. Mr. Daughtrey sued Enterprise for negligent and wanton inspection, maintenance, and/or repair of the alleged defective brakes on the car that he rented. (Doc. 1-1 at 3–6).

Before the court is Enterprise's motion for summary judgment. (Doc. 16). Mr. Daughtrey has conceded his wantonness claim. (Doc. 20 at 19). The court therefore **WILL GRANT** Enterprise's motion for summary judgment on that claim without further discussion.

Mr. Daughtrey opposes summary judgment on his negligence claim. (Doc. 20 at 9–15). Because there is no evidence Enterprise had any notice of a problem with the car's brakes or that it failed to exercise reasonable care in inspecting and maintaining the brakes on Mr. Daughtrey's rental car, the court **WILL GRANT** Enterprise's motion for summary judgment on that claim.

In his response in opposition to summary judgment, Mr. Daughtrey also contends that Enterprise concealed or spoliated evidence, but he does not seek sanctions or other relief for alleged spoliation at this juncture. (Doc. 20 at 16–19). Accordingly, the court does not make any findings regarding spoliation.

## I. BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotations omitted).

On August 15, 2018, Mr. Daughtrey rented a car from Enterprise. (Doc. 15-1 at 5; doc. 15-6 at 1). Ten days later, Mr. Daughtrey noticed a line of stopped vehicles at an intersection about one-tenth to one-quarter of a mile ahead of him as he was driving down Alabama Highway 119. (*Id.* at 9; *see also* doc. 15-6 at 1). Mr. Daughtrey "hit[] the brakes and there [was] no resistance." (Doc. 15-1 at 9). Scared, he "stomp[ed] the brakes because there was nothing there." (*Id.*). Despite

"continually trying to hit the brake," Mr. Daughtrey had to steer off the road and turn to the right to miss hitting the car front of him. (*Id.* at 10). A driver of one of the cars stopped at the intersection "heard tires screeching behind" her "as if brakes were being applied and tires were skidding." (Doc. 15-7 at 2 ¶ 3). When he veered off the road, Mr. Daughtrey struck a tree, breaking a vertebra and injuring his legs so severely that he needed fourteen surgeries. (Doc. 15-1 at 11–12).

Enterprise's expert accident reconstructionist, Joey K. Parker, opined that the rental car's brakes were activated and working during and immediately before the accident. (Doc. 15-2 at 9, 11; *see also id.* at 23–24). He developed this opinion by reviewing data from the airbag control module in the rental car. (Doc. 15-2 at 4). Based on the data he reviewed, Mr. Parker saw no indication that vehicle fault caused the accident. (*Id.* at 13). He also testified that "depending on the circumstances," squealing tires do not necessarily mean that brakes are working. (*Id.* at 20).

Enterprise maintains a written policy regarding maintenance of its cars. (Doc. 15-5 at 11; *see also* doc. 15-6 at 12–14). That policy requires regular preventative maintenance that includes, among other things, a brake inspection. (Doc. 15-6 at 13). Mr. Daughtrey's rental car became part of Enterprise's fleet in December 2017 and underwent preventative maintenance service in February 2018 and June 2018. (Doc. 15-5 at 6; doc. 15-6 at 2–4). Mr. Daughtrey rented the car in

August 2018, just under ten weeks after the last preventative maintenance service. (Doc. 15-6 at 2–3).

Mr. Daughtrey testified he had no problems with the brakes on the car before the accident, and he never notified Enterprise of any issues with the brakes. (Doc. 15-1 at 6, 8, 10–11). Enterprise's records do not document any other customer complaints about the brakes on the car before Mr. Daughtrey rented it. (Doc. 15-5 at 8–9; doc. 15-6 at 1–4).

## II.   DISCUSSION

Before addressing the arguments Enterprise makes in its motion for summary judgment, the court must briefly address the scope of Mr. Daughtrey's complaint. Setting aside the wantonness claim that he has expressly conceded, the amended complaint asserts one claim against Enterprise for negligent inspection, maintenance, and/or repair of alleged defective brakes on the rental car. (Doc. 1-1 at 5–6 ¶¶ 6–9).

In his response to the motion for summary judgment, however, Mr. Daughtrey argues that his complaint asserts a claim for negligent bailment based on Enterprise renting the car to him despite knowing that it had acceleration problems that affected its driveability. (Doc. 20 at 2, 9–11, 14–15).

First, it is unclear whether negligent bailment is a separate claim from a negligent inspection, maintenance, and repair claim, or whether both are common

law negligence claims where the relationship between the parties defines the contours of the applicable duty. *Compare Aircraft Sales & Serv. v. Gantt*, 52 So. 2d 388, 391, 255 (Ala. 1951) ("Where there is a bailment for the mutual benefit of the parties, as for hire, there is imposed on the bailor, in the absence of a special contract or representation, an obligation that the thing or property bailed for use shall be reasonably fit for the purposes or capable of the use known or intended.") *with Darnell v. Nance's Creek Farms*, 903 F.2d 1404, 1410 (11th Cir. 1990) (explaining that under Alabama's Safe Brake Statute, Ala. Code § 32-5-212, motor vehicle owners whose cars operate on a highway have a duty to "maintain adequate brakes on their vehicles").

If a negligent bailment claim is a different cause of action from a negligent maintenance claim, then Mr. Daughtrey's complaint does not expressly assert a negligent bailment claim, and he "may not amend "h[is] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n.4 (11th Cir. 2002). If the distinction between the two claims is merely one about the origin of a defendant's duty, then the distinction is one without a difference because as explained below, Mr. Daughtrey has not submitted evidence showing that Enterprise had any notice of a problem with the

5

car's brakes or that it failed to exercise reasonable care in inspecting and maintaining the brakes on the rental car.

Still, whether characterized as a negligent bailment claim or a negligent maintenance claim, the complaint alleges that Enterprise breached its duty to rent a safe car to Mr. Daughtrey in one specific manner: when it "negligently, recklessly and/or willfully failed to inspect and properly maintain and/or repair defective brakes on the subject rental vehicle." (Doc. 1-1 at 5 ¶ 7). The complaint further alleges that "the vehicle's brakes failed to operate" which caused Mr. Daughtrey "to leave the roadway and strike a tree," and that "[t]he brakes' failure to operate was the result" of Enterprise's "failure to inspect and properly maintain and/or repair the vehicle" before Mr. Daughtrey rented it. (*Id.* at 5 ¶ 8).

None of the factual allegations in the complaint would have put Enterprise on notice that it breached any duty except as it relates to the brakes on the rental car or that anything other than alleged defective brakes caused the accident in question. (*See generally* doc. 1-1 at 5 ¶¶ 6–8). Mr. Daughtrey never sought to amend his complaint to expand the scope of the alleged breach or cause of the accident to include any malfunction other than an alleged brake failure, and he cannot do so through his brief in response to Enterprise's motion for summary judgment. *See Gilmour*, 382 F.3d at 1315. Accordingly, the court's memorandum

and inspection of the braking system in the rental car. (Doc. 16 at 15). The court agrees.

Even if Mr. Daughtrey could establish that defective brakes caused his injuries, Enterprise may avoid liability by showing liability by proving "lack of notice and exercise of reasonable care." *See Darnell*, 903 F.2d at 1410; *City of Montgomery v. Bennett*, 487 So. 2d 942, 944 (Ala. 1986) ("[T]he owner or operator is excused from liability, insofar as liability is based upon the instance of a brake defect, if he did not have notice, actual or constructive, of the brake defect and exercised reasonable care with respect to the inspection and maintenance of said braking system."); *see also Aircraft Sales & Serv. v. Bramlett*, 49 So. 2d 144, 147 (Ala. 1950) (explaining that in the bailor/bailee context, generally "it is for the jury to determine whether or not the defendant has been guilty of negligence, unless there is an entire absence of evidence affording an inference of negligence" or unless "the evidence show[s] without conflict that the defendant did what an ordinarily prudent person would have done under the circumstances to avert the loss," in which case the defendant is entitled to an affirmative charge or directed verdict).

The evidence is undisputed that Enterprise had no knowledge of any defect with the brakes on Mr. Daughtrey's rental car. The car's unit history shows that the vehicle had regular preventative maintenance service, which includes inspection of

the brakes, in February 2018 and in June 2018. (Doc. 15-6 at 2–3, 13). Enterprise's records related to the rental car do not indicate any problems with the brakes during that service. (Doc. 15-6 at 2, 3). In addition, Enterprise's records do not show any customer complaints about the brakes. (Doc. 15-6 at 1–4; *see also* doc. 15-5 at 7–9, 19). Finally, Mr. Daughtrey himself never experienced any problems with the brakes before the accident and never alerted Enterprise to any problems with the brakes. (Doc. 15-1 at 6, 8, 10–11). Mr. Daughtrey's brief points to no evidence suggesting that Enterprise knew or should have known about defective brakes in his rental car. In fact, his brief does not even address whether Enterprise had knowledge of defective brakes. (*See generally* doc. 20).

The evidence also is undisputed that Enterprise exercised reasonable care in the inspection and maintenance of the brakes on the rental car. Again, Enterprise's policies require preventative maintenance, including inspection of the brakes, at regular intervals. (Doc. 15-6 at 13). Enterprise's risk manager testified that nothing in the rental car's history indicated that Enterprise did not follow its policies with respect to Mr. Daughtrey's rental car. (Doc. 15-5 at 19). Indeed, the rental car received preventative maintenance (which according to Enterprise's policy included a brake inspection) twice between when the car was put in service in December 2017 and the accident in August 2018. (Doc. 15-6 at 2–3; *see id.* at 13). And nothing in Enterprise's records indicated any problem with the brakes that

needed additional inspection or repair. (Doc. 15-6 at 1–4; *see* doc. 15-5 at 19). Mr. Daughtrey's brief does not address Enterprise's reasonable care argument, and it does not point to evidence creating questions of fact about whether Enterprise exercised reasonable care. (*See generally* doc. 20).

Because Enterprise has demonstrated that it had no knowledge of any brake defect and that it exercised reasonable care in the inspection and maintenance of the brakes on the rental car, Enterprise is entitled to summary judgment on Mr. Daughtrey's negligence claim.

## III.  CONCLUSION

The court **WILL GRANT** Enterprise's motion for summary judgment on Mr. Daughtrey's negligence and wantonness claims. The court **WILL ENTER** a separate final judgment in favor of Enterprise and against Mr. Daughtrey on both claims.

**DONE** and **ORDERED** this October 4, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE